**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

            Plaintiff,

v.                                          **No. 19-CR-02324-JB**

**ADAM PAIZ**

            Defendant

### *AMENDED* EMERGENCY MOTION TO RECONSIDER ORDER OF DETENTION PENDING TRIAL (*For Ruling Before the Magistrate Judge*)

COMES NOW, Defendant Adam Paiz by and through his counsel of record, Sarah M.

Gorman, Esq. and hereby respectfully moves this court to reconsider the court's Order of

Detention Pending Trial for Mr. Paiz (Doc. 9) issued pursuant to the Bail Reform Act of 1984,

18 U.S.C. § 3142, on grounds that Mr. Paiz suffers from Hepatitis C, a chronic liver disease, and

thus a compromised immune system, a medical condition which the Centers for Disease Control

("CDC") has identified as putting Mr. Paiz at a higher risk of a severe illness from the

coronavirus ("COVID-19").  Additionally, Cibola County Correctional Center, where Mr. Paiz is

being held, is suffering a massive outbreak of COVID-19 and he is at a high risk of contracting

the virus.

Mr. Paiz respectively requests this court to grant this motion and issue an Order for

immediate release of Mr. Paiz from custody at CCCC, pre-trial supervision and GPS monitoring,

with his mother Alice Paiz serving as third-party custodian, pending his trial.  Alternatively, Mr.

Paiz asks that he be released to the La Pasada halfway house with GPS monitoring.  As of the

date of this filing, no positive cases of COVID-19 have been found at La Pasada and there is

more ability to appropriately social distance.  Pre-Trial Services agrees to Mr. Paiz' release

1

pending trial if he were to complete an in-patient drug treatment program, and then they would

consider placement with his mother.  Mr. Paiz does not oppose an in-patient treatment program,

however, if such placement is not possible given restrictions with COVID-19, he requests

placement with his mother or La Pasada with GPS monitoring.  The government opposes this

motion.  Mr. Paiz asks the Court to grant this motion or hold an emergency hearing on the

motion. In support of this motion, Mr. Paiz states the following:

## **INTRODUCTION**

Mr. Paiz respectfully requests this court to issue an order granting Mr. Paiz' immediate

release pending trial due to his diagnosed Hepatitis C which makes him at higher risk of severe

illness from COVID-19, or to grant a hearing to reconsider his pre-trial incarceration.  Mr. Paiz

is a pretrial defendant currently detained at the Cibola County Correctional Center ("CCCC") in

Milan, New Mexico.

Defendant pleaded not guilty to an indictment on July 30, 2019 and is charged by

indictment with 18 U.S.C. §922(g)(1), being a felon in possession of a firearm and ammunition;

18 U.S.C. §924(c), possession of a firearm in furtherance of a drug trafficking crime; 21 U.S.C.

§§841(a)(1) and (b)(1)(B), possession with intent to distribute 50 grams and more of a mixture

and substance containing methamphetamine; and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C),

possession with intent to distribute heroin.  Trial in this matter is currently scheduled for August

6, 2020, however a motion to continue was filed on July 10, 2020.

Mr. Paiz is at a higher risk of severe illness from the coronavirus because Mr. Paiz has

been diagnosed with Hepatitis C, a "viral infection that causes liver inflammation, sometimes

leading to serious liver damage" (Hepatitis C, Mayo Clinic, https://mayocl.in/2WagHNG (last

visited May 6, 2020)) and which has been identified by the CDC as a medical condition exposing

the individual to a higher risk for severe illness from COVID-19 (*Groups at Higher Risk for*

*Severe Illness*, CDC, https://bit.ly/2ypSWb7 (last visited July 3, 2020); and (2) Mr. Deleon's

Hepatitis C remains untreated, further heightening his risk (*People Who Are at Higher Risk for*

*Severe Illness*, CDC, https://bit.ly/3bACXoG (last visited July 3, 2020). Mr. Paiz' higher risk for

serious illness from COVID-19 justifies the court's reconsideration of Mr. Paiz' pretrial

detention.  *See* Attachment[1].  This warrants Mr. Paiz' release on pre-trial supervision and GPS to

his mother or if the Court deems appropriate to La Pasada or in-patient drug treatment.

## Factual Background

### Changed Circumstances: COVID-19 Outbreak

> Coronaviruses are a family of viruses that can cause illnesses such as the common
> cold, severe acute respiratory syndrome (SARS) and Middle East respiratory
> syndrome (MERS). In 2019, a new coronavirus was identified as the cause of a
> disease outbreak that originated in China.

*Coronavirus Disease 2019 (COVID-19)*, Mayo Clinic, https://mayocl.in/2KVZf93 (last visited

May 3, 2020) ("Mayo Clinic").

On March 11, 2020, the World Health Organization officially classified COVID-19 as a

pandemic.  *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March

11, 2020), https://bit.ly/2UGLVK4.

> The virus appears to spread easily among people, and more continues to be
> discovered over time about how it spreads. Data has shown that it spreads from
> person to person among those in close contact (within about 6 feet, or 2 meters).
> The virus spreads by respiratory droplets released when someone with the virus
> coughs, sneezes or talks. These droplets can be inhaled or land in the mouth or
> nose of a person nearby.  It can also spread if a person touches a surface with the
> virus on it and then touches his or her mouth, nose or eyes.

---

[1] Mr. Paiz' medical records showing he has Hepatitis C.

*See supra*, Mayo Clinic.

On March 11, 2020, New Mexico reported its first three positive cases of COVID-19. *New Mexico Announces First Presumptive Positive COVID-19 Cases*, New Mexico Dept. of Health (March 11, 2020), https://bit.ly/2Yt0OTT (last visited May 3, 2020).  On the same day, New Mexico Governor Michelle Lujan-Grisham and the New Mexico Department of Health ("NMDH") declared a State of Emergency in New Mexico "to maximize the resources available to the state in order to fight the potential spread of the virus and minimize public health risks for New Mexicans." *Updated: Governor, Department of Health announce first positive COVID-19 cases in New Mexico, Press Releases,* Office of the Governor (March 11, 2020), https://bit.ly/33XbevK (last visited May 3, 2020). This declaration was followed by Gov. Lujan Grisham and the Secretary of the NMDH ordering all non-essential businesses in the state to close and prohibiting gatherings of five or more people. 03-23-2020 Public Health Emergency Order (March 23, 2020), https://bit.ly/2zg3wSa.

"Throughout March, 2020, Governor Lujan Grisham urged New Mexico residents to avoid public gatherings, avoid non-essential travel, and engage in social distancing." *Legacy Church, Inc. v. Kunkel*, No. CIV 20-0327 JB\SCY, 2020 U.S. Dist. LEXIS 68415, *8 (D.N.M. Apr. 17, 2020) (*citing* Emergency Declaration; Marjorie Childress, Celia Raney, and Trip Jennings, *Officials predict dire consequences if state doesn't practice social distancing*, New Mexico In Depth (March 31, 2020), https://bit.ly/2YvWHXg (last visited May 3, 2020).

According to the CDC, social distancing (aka "physical distancing") "means keeping space between yourself and other people outside of your home."  *Social Distancing, Quarantine, and Isolation*, CDC, https://bit.ly/2W0jp8n (last visited May 3, 2020).

The practice of social distancing requires

- Staying at least 6 feet (about 2 arms' length) from other people
- Not gathering in groups
- Staying out of crowded places and avoiding mass gatherings

*Id.*

On March 13, 2020, President Donald Trump declared that the coronavirus outbreak in the United States constitutes a national emergency. *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, White House, (Mar. 13, 2020), https://bit.ly/35rfwwd (last visited May 3, 2020).

As the numbers of New Mexicans testing positive for and dying from COVID-19 increased in the state, and the predictions for further spread of the virus continued, on April 6, 11, and 30, 2020, and on May 5, 2020, the governor and the NMDH issued further orders amending prior Public Health Emergency orders, each time recognizing that the state was at a

crucial juncture at which stricter adherence to social distancing and self-isolation measures will be necessary to protect the integrity of our health care system and against potentially devasting effects that could result from a rapid increase in COVID-19 cases in New Mexico.

04-06-2020 -- Public Health Order, Office of the Governor (April 6, 2020), https://bit.ly/3dz5hsL; 04-11-2020 -- Public Health Order, Office of the Governor (April 11, 2020), https://bit.ly/2zimHL2; 04-30-2020 -- Public Health Order, Office of the Governor (April 30, 2020), https://bit.ly/2L8Agzo; 05-05-2020 -- Public Health Order, Office of the Governor (May 5, 2020) (collectively, "NM Public Health Orders" or "Orders").

As of July 27, 2020, the coronavirus which causes COVID-19, has infected over 4.3 million people in the United States resulting in at least 148,442 deaths. *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (July 27, 2020, 10:00 p.m.), https://nyti.ms/2U4kmud (last visited July 20, 2020, updating regularly). As of July 27, 2020, there have been 19,502 confirmed positive cases of COVID-19 and 619 deaths in New Mexico.

COVID-19 in New Mexico, New Mexico Dept. of Health, https://bit.ly/3cchUJI (last visited July 27, 2020, updating regularly). These numbers change daily and continue on an upward track, especially in recent weeks.  Tracking Coronavirus in New Mexico, KRQE News (*citing* NMDH), https://bit.ly/2Sw6CIA (last visited July 20 2020, updating regularly).

In fact, New Mexico, along with its neighboring states, Arizona and Texas, are among a growing number of states in the country which have recorded their highest seven-day average of new COVID-19 cases since the pandemic's beginning. Oliver Milman, *Coronavirus: more than a dozen US states see record high of new cases*, The Guardian (June 9, 2020, 11:51 EDT), https://bit.ly/37tx9g0. These recent spikes in positive cases coincide with the "re-opening" and easing of restrictions on activity within the states since Memorial Day. *Id.*

New Mexico began to ease social restrictions, with a Public Health Order issued by the governor on June 1, 2020, reiterating that "[c]ontinued social distancing and self-isolation measures are necessary to protect public health given the potentially devastating effects that could result from a rapid increase in COVID-19 cases in New Mexico" and further stating that "the core directive underlying all prior public health initiatives remains intact."  06-01-2020 -- Public Health Order, Office of the Governor (June 1, 2020) (to be included in references to "NM Public Health Orders" or "Orders," defined *supra*).  However, on July 13, 2020 the governor modified the public health order due to rising cases in New Mexico.  She emphasized that wearing a mask in public is mandatory and closed indoor dining.  *See* nmhealth.org/public-health-orders-and-executive-orders.

As of July 27, 2020, Cibola County, in which CCCC is located, has tested 10,422 people, resulting in 302 cases of COVID-19 and 17 deaths. COVID-19 in New Mexico (county dashboard), New Mexico Dept. of Health, https://bit.ly/2Wp4PpE (last visited July 27, 2020,

updating regularly).  Recently, all U.S. Marshal detainees have begun to be tested at Cibola County Correctional Center and there is a massive outbreak of the virus.  As of July 27, 2020 175 people have tested positive for the virus at Cibola County Correctional Center.  More test results are pending.

The lightning fast spread of coronavirus at the Otero County Prison Facility ("OCPF") once the first case was reported is an instructive warning and a similar situation seems to be unfolding at Cibola County Correctional Facility.   After conducting COVID-19 testing of its entire staff and 25% of its inmate population, on May 15, 2020, OCPF reported its first positive case of COVID-19 which was for a male correctional officer. Media Release, New Mexico Corrections Department ("NMCD"), NMCD announces results for inmate and staff testing (May 15, 2020) (https://bit.ly/3dVsupk).  After the first positive case, OCPF experienced a sudden outbreak of COVID-19 cases within the prison population: On May 18, 2020, NMCD reported that 21 inmates had tested positive for coronavirus, Media Releases, NMCD, respectively, NMCD announces positive inmate tests (May 18, 2020) (https://bit.ly/2XVwlNQ). By June 11, 2020, OCPF positive cases had spiked to 222 state inmates and 273 federal inmates. COVID-19 in New Mexico (Correctional Facility dashboard), NMDH, https://bit.ly/2zpcCfP (last visited June 11, 2020, updating regularly). OCPF experienced its first COVID-19 death of an inmate in custody on June 1, 2020. Media Release, NMCD, NMCD announces first COVID related death (June 1, 2020) (https://bit.ly/37sGh4n).

While there are 92 positive cases at Otero County ICE facility, for a total of 587 positive cases at Otero County inmate facilities, the Torrance County ICE facility has 18 positive cases, and CCCC reports 175 cases of COVID-19. COVID-19 in New Mexico (Correctional Facility dashboard), NMDH, https://bit.ly/2zpcCfP (last visited July 27, 2020, updating regularly).

The CDC identifies that "people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19."  CDC, *People Who Are at Higher Risk for Severe Illness*, CDC, https://bit.ly/3bACXoG (last visited May 6, 2020). Specifically, the CDC identified that those at high-risk for severe illness from COVID-19 include individuals, like Mr. DeLeon, with liver disease and those who have compromised immune systems. *Id.; CDC, What to Know About Liver Disease and COVID-19,* https://bit.ly/2WBKwFR (last visited May 6, 2020).

The CDC also urges, "If you are at higher risk for serious illness from COVID-19 because . . . you have serious long term health problems, it is extra important for you to take actions to reduce your risk of getting sick with the diseases." *What Can You Do*, CDC, https://bit.ly/2xEVEsY (last visited May 6, 2020).  The CDC further states that "the best way" for those individuals with Hepatitis C to protect themselves

> "*is to avoid exposure to the SARS-CoV-2 virus*.  People with liver disease *should take the same preventative actions* being taken by people with other underlying conditions to avoid getting sick with or spreading COVID-19."

*What to Know About Liver Disease and COVID-19,* CDC, https://bit.ly/2WBKwFR (last visited May 6, 2020) (emphasis added). Notably, the CDC advises that "it is important to continue treatment" for Hepatitis C. *Id.*

The preventative actions recommended by the CDC include washing hands often, "tak[ing] everyday precautions to keep space between yourself and others (stay 6 feet away, which is about two arms lengths)"; keeping away from people who are sick; cleaning and disinfecting frequently touched surfaces areas, and staying home if possible. *What Can You Do*, CDC, https://bit.ly/2xEVEsY (last visited May 6, 2020).

Confirmed cases in Cibola County and throughout most New Mexico counties indicates the prevalence of community spread, and the entire criminal justice system and state government must take every necessary action to protect vulnerable populations – namely prison and jail populations -- and the community at large. Mr. Paiz is vulnerable and at a higher risk of suffering severe illness from COVID-19, because he suffers from Hepatitis C and thus a compromised immune system.

***Conditions of Confinement and Spread of Coronavirus***

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease. Joseph A. Bick, *Infection Control in Jails and Prisons*, *Clinical Infectious Diseases* 45(8):1047-1055 (2007), https://doi.org/10.1086/521910.  The CDC unequivocally states that incarcerated individuals "are at a greater risk for some illnesses, such as COVID-19, because of the close living arrangements with other people." *FAQs for Correctional and Detention Facilities*, CDC, https://bit.ly/2W9Ofvd (last visited May 6, 2020).  Inmates cycle in and out of detention facilities from all over the country, and people who work in the facilities including correctional officers and care and service providers leave and return daily without screening.  "Prison inmates can't control their own contact with guards coming from the outside everyday, and have little to no control over access to health care." Proctor*, supra.*  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.  Laura M. Maruschak, *et al., Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Department of Justice, Bureau of Justice Statistics (February 2015), https://bit.ly/2YEF9bu.

Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health

experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."  *Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*" (March 2, 2020), https://bit.ly/2W9V6oS.

On March 25, 2020, the United Nations (UN) called for countries to reduce the number of people in detention, explaining that physical distancing and self-isolation in such conditions are practically impossible. Merrit Kennedy, *U.N. Calls for Countries to Reduce Prison Populations*, NPR (March 25, 2020, 12:41 p.m.), https://n.pr/2zekmkp.  The U.N. High Commissioner Michelle Bachelet advised that authorities should look for ways to release people who are especially vulnerable to the disease such as those who are elderly or who have health issues in addition to low-risk offenders. *Id.*

By April 13, 2020, Los Angeles County in California had released 25% of its county inmate population, which equates to 4,276 inmates. Bill Melugin, *L.A. Sheriff: Inmate release effective, but possible surge in crime ahead,* FOX 11 Los Angeles (April 13, 2020), https://bit.ly/2A8FwAY. The L.A. County Sheriff reasoned, "We were faced with a choice, if we left the jail system fully populated and overpopulated then the pandemic is a lot easier to sweep through the jail system and jeopardize everyone's safety." *Id.*

In New Jersey, by April 29, 2020, the state had identified approximately 10% of all inmates, approximately 1,880 individuals, who could be released pending approval by the state parole board or the commissioner of the New Jersey Department of Corrections.  Stacey Barchenger, *NJ identifies 781 more eligible inmates as releases begin to stem coronavirus in*

*prisons*, northjersey.com (Apr. 29, 2020, 5:16 a.m.), https://njersy.co/3b87XeZ. There, the

identified inmates are "those who are over age 60 and those who suffer from health conditions,

which – combined with close quarters inside prisons – make them especially vulnerable to

coronavirus." *Id.*

***Specific Conditions at the Cibola County Correctional Center***

CCCC is a medium-high level security private (CoreCivic) prison with an inmate

capacity of 1204.  Prison Rape Elimination Act (PREA) Audit Report, Cibola County

Correctional Center, CoreCivic, at 2 (Apr. 22, 2019), https://bit.ly/3bdL2yQ.  The facility

employs 217 staff who come into contact with inmates. *Id.* In addition, CCCC engages 68

volunteers and individual contractors who are authorized to enter the facility and may have

contact with inmates. *Id.*  CCCC's nine operational housing units are divided into four

management units or pods. *Id.,* at 11. Pods are designed as two tiers of double-occupancy cells,

and some pods have open dormitory style housing of 40 beds each. *Id*. Inmates are served their

food in the dayroom of their housing units. *Id*., at 13.

Pursuant to information produced by CCCC in response to a New Mexico Inspection of

Public Records Act ("IPRA") request, CCCC provided inmates with a cloth or surgical facemask

to be voluntarily worn on condition that the inmate sign an Acknowledgment and Release for the

inmate's use of the facemask.  CCCC inmates were further reminded "to follow all CDC issued

guidelines to prevent the spread of COVID-19, including social distancing, frequent hand

washing, and avoiding skin contact with others." *Id.; Cf.* CDC, FAQs for Correctional and

Detention Facilities. https://bit.ly/2W9Ofvd (last visited May 6, 2020) (The CDC unequivocally

states that incarcerated individuals "are at a greater risk for some illnesses, such as COVID-19,

because of the close living arrangements with other people.").

Besides encouraging inmates to follow the CDC guidelines (unrealistic within the confines of a prison) and offering the option to wear face masks with a signed release of liability for CoreCivic (a requirement focused on CoreCivic's own liability rather than on the primary care of inmates), there is no readily available information regarding CoreCivic's implementation at CCCC of precautions in response to the coronavirus, including evidence of routine or adequate inmate testing, and it is unknown whether any specialized precautions are in place at CCCC that guard the health and safety of inmates in the context of COVID-19.

As additional people are arrested who have been out in the community and as the coronavirus spreads, if they are not symptomatic, they will be brought into CCCC and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions

## ARGUMENT

### I.      The Bail Reform Act Requires the Release of Mr. DeLeon

The CDC has determined that Mr. Paiz' Hepatitis C diagnosis places him in at high risk for severe illness from COVID-19.  *What to Know About Liver Disease and COVID-19,* https://bit.ly/2WBKwFR (last visited May 6, 2020). Supervised release of Mr. DeLeon pending his February 1, 2021, trial is an appropriate measure within the unusual and dire circumstances wrought by the unprecedented coronavirus global pandemic.  The social health circumstances have changed since Mr. Paiz was ordered detained.  The global and continually spreading pandemic poses a direct risk that is far greater to Mr. Paiz if he continues to be detained during this public health crisis.

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the

judicial officer determines such release to be necessary for preparation of the person's defense or *for another compelling reason."* 18 U.S.C. § 3142(i)(4) (emphasis added).

The Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (*quoting* S. Rep. No. 98-225, at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); *see United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to the norm of liberty prior trial).

When determining whether an inmate should be released pending trial, the court must find "'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *U.S. v. Vencomo-Reyes*, No. CR 11-2563 JB, at *10 (D.N.M. Nov. 28, 2011) (*citing* 18 U.S.C. § 3142(e)).

> To determine whether there are conditions that would reasonably assure the defendant's appearance and the community's safety, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.

*United States v. Sam,* No. CR 15-3051 JB, 2015 U.S. Dist. LEXIS 162690, at *17 (D.N.M. Nov. 6, 2015) (*citing* 18 U.S.C. § 3142(g)).

Whether a person is a danger to the community or to another person must be shown by clear and convincing evidence. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1252 (D. Kan. 2002) (*citing United States v. King,* 849 F.2d at 485 n. 3; 18 U.S.C. § 3142(f).

**A. Mr. Paiz is not a flight risk, does not pose a threat to society if released, and conditions of release are available to ensure Mr. DeLeon's appearance in person at trial.**

From Mr. Paiz' perspective his life, not only his liberty, is on the line, creating a powerful

incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case.

There is no evidence supporting that Mr. Paiz would pose a present danger to another person or to the community should he be released. *See United States v. Salerno*, 481 U.S. 739, 741, 107 S. Ct. 2095, 2098,2100 (1987) (evaluating the defendant's present danger to the community in a section 3142 analysis); *see also US v. McLean*, No. 19-cr-380, Dkt. No. 21, at 1 (D.D.C. Mar. 28, 2020) (granting the defendant's emergency motion for release, the court recognized that with one exception, the factors which previously weighed in favor of a finding of defendant's dangerousness had not changed; that COVID-19 was the one exception that "not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. § 3142(e), but tilts the balance in favor of release" due to the defendant's high risk medical condition). The government must show that Mr. DeLeon actually poses a danger to the community, not that he poses a danger in theory. *See United States v. Patriarca*, 948 F.2d. 789 (1st Cir. 1991). Moreover, Mr. Paiz' prior criminal record is per se insufficient to maintain a finding of dangerousness. *See United States v. Cruz*, 363 F. Supp. 2d 40, 46 (D.P.R. 2005).

Mr. Paiz does have criminal history, however any offenses that may have included any type of violence are over 15 years old. There is no evidence to suggest Mr. Paiz is a present danger to the community. Critically, during his pretrial release, Mr. Paiz will not be left to his own devices, but it is proposed and expected that he will be GPS monitored and supervised by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release. Thomas H. Cohen, *et. al*., *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A*

*Research Summary*, Probation and Pretrial Services, Administrative Offices of the Courts (September 2018), https://bit.ly/2SN9scf.

In the District of New Mexico, the Pretrial Services Violations Summary Report for the 12-Month Period Ending September 30, 2018, reported that of the 919 cases in release status, there were violations in only 14.6% of the cases, and only 33 failures to appear. There were zero re-arrest violations (for new crimes). Pretrial Services Violations Summary Report For the 12-Month Period Ending September 30, 2018, Table H-15, U.S. District Courts, https://bit.ly/3dlNzIM.

Upon his release, Mr. Paiz will either live with his mother or if the Court finds appropriate at the half-way house. He is also willing to participate in in-patient drug treatment, as recommended by pre-trial services. *See United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 145 (D.P.R. 2002) (releasing the defendant, who the court would have detained on dangerousness grounds, to the custody of his mother and grandmother on 24-hour house arrest due to his severe injuries). Mr. Paiz would be similarly supervised as the defendant in *Cordero-Caraballo*.

The chronically ill, no matter the crime of which they are accused, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives. Mr. Paiz' high-risk vulnerability to severe illness from a combination of COVID-19 and Hepatitis C warrant Mr. Paiz' immediate supervised release.

**B.  The risk posed to Mr. DeLeon by COVID-19 due to his medical condition is a compelling reason for Mr. Deleon's release under 18 U.S.C. § 3142(i)**

Compelling reasons may exist where release is necessary under 18 U.S.C. § 3142(i) where the defendant's serious medical conditions warrant release, *see, e.g., United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is

denied bail "retains the ability to request[,] . . . in extraordinary circumstances, . . . temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant); *see also United States v. Birbragher,* No. 07- cr-1023-(LRR), 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (describing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), and *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), as cases in which courts found "compelling reason" to temporarily release defendants due to the defendants' serious medical issues).

The CDC identified that those at high-risk for severe illness from COVID-19 include individuals, like Mr. DeLeon, with liver disease and those who have compromised immune systems. *Id.; CDC, What to Know About Liver Disease and COVID-19,* https://bit.ly/2WBKwFR (last visited May 6, 2020). Enacting the guidelines put forth by the CDC and the emergency measures specifically outlined in the NM Public Health Orders to mitigate the spread of COVID-19 for the health and safety of New Mexico's citizens are impossible to achieve within a detention facility. *See supra,* at 8, *Conditions of Confinement and Spread of Coronavirus.* Specifically, it is virtually impossible for Mr. Paiz, while incarcerated, to maintain a social distance of six feet, avoid mass gatherings, and to "stay home." Mr. Paiz cannot control his movements, the people placed and housed near him, the people who come in and out of his living space, and whether and how he receives medical care. The drastic and dramatic precautions taken by the rest of the world to slow the spread of COVID-19 are not within the control of Mr. Paiz nor is there evidence they are implemented in CCCC.

Mr. Paiz is at high risk for severe illness due to COVID-19 and his vulnerable and compromised immune system as a result of Hepatites C. His susceptibility to COVID-19 is heightened because he is not being treated for his Hepatitis C, he cannot control his environment,

nor engage in the precautionary conduct put forth by the CDC and the NMDH. Mr. Deleon's

immediate release under 18 U.S.C. § 3142(i) is warranted.

## II.     Public policy regarding inmate vulnerability in the context of COVID-19 supports Mr. Paiz' supervised pretrial release

One charged with a crime is presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). A

single individual unnecessarily detained before trial is one individual too many, and the

increasing use of the practice places tremendous wear on our constitutional system. *United*

*States v. Montalvo-Murillo*, 495 U.S. 711, 723–24 (1990) (Stevens, J., dissenting, joined by

Brennan and Marshall, JJ.). Due to the crucial interests involved, it follows that a "case-by-case"

approach is required at any stage of the case in assessing the propriety of pretrial detention. *See*

*United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process

analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake)

(citations omitted).

The courts have long recognized that there is no greater necessity than keeping a

defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who

have not been proven guilty. When we do punish, we do not act cruelly. Continued

incarceration of this terminally ill defendant threatens both of these fundamental characteristics

of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant

with AIDS facing murder charges released on bail because of the "unacceptably high risk of

infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No.

6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation

of the Mann Act and possession of child pornography and suffering from diabetes, heart

conditions, and open sores released on home detention because of his medical conditions);

*United States v. Johnston*, No. 17-00046 (RMM), 2017 WL 4277140 (D. D.C. Sept. 27, 2017)

17

(defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D. P.R. 2002) (badly wounded defendant released to custody of his relatives).

 This Court should consider the "total harm and benefits to prisoner and society" that continued pretrial imprisonment Mr. Paiz will yield, relative to the heightened health risks posed to Mr. DeLeon during this rapidly encroaching pandemic. *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant).

## Conclusion

 Mr. Paiz is among the vulnerable population identified by the CDC to be at a heightened risk of getting severely sick from COVID-19. For all of the above reasons, Mr. Paiz respectfully requests this court to grant this Motion and to issue an order for Mr. Paiz' immediate release to his mother as a third party custodian with GPS and pre-trial supervision. Alternatively, Mr. Paiz asks the Court to release him to his La Pasada half-way house.

Respectfully submitted,

By: /s/ electronically 7/28/2020
  Sarah M. Gorman
  Attorney for Adam Paiz
  Law Offices of Sarah M. Gorman
  1201 Lomas Blvd. NW, Ste. A
  Albuquerque, NM 87102
  (505) 243-5442

I hereby certify that a true and correct
copy of the foregoing was provided
to counsel for the government, via CM/ECF
on this 28th day of July, 2020.
/s/ electronically July 28, 2020_____
Sarah M. Gorman
Attorney at Law